IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

DAVID DWAYNE CASSADY,

    Plaintiff,

    v.

R.J. REYNOLDS TOBACCO CO.;
PHILLIP MORRIS INC.; and
AMERICAN TOBACCO CO.,

    Defendants.

CIVIL ACTION NO.
CV 313-092

## O R D E R

Presently, Defendants have filed a motion to dismiss Plaintiff David Dwayne Cassady's complaint alleging injuries caused by inhaling secondhand cigarette smoke while imprisoned. Plaintiff has responded, and the motion is ripe for consideration.

### I. PLAINTIFF'S COMPLAINT[1]

Plaintiff has been an inmate in the Georgia Department of Corrections approximately 21 years. (Compl. ¶ 23.) On

---

[1] In consideration of the present motion to dismiss, the Court accepts all facts alleged in the complaint as true and construes all reasonable inferences in the light most favorable to Plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

average, Plaintiff has lived with 20 to 25 smokers who smoked indoors and in his shared living space. (Id. ¶ 38 ("alleging that the smoking created "an atmosphere equivalent or greater than living in a casino, gaming hall, bar or restaurant packed with smokers to full capacity").) In early 2007, Plaintiff noticed his breathing had become laborious, especially in the immediate vicinity of tobacco smoke. (Id. ¶ 39.) On July 16, 2008, a physician assistant noted abnormal lung sounds in Plaintiff's chest. After an x-ray was taken, Plaintiff was diagnosed with bronchitis and given antibiotics. (Id. ¶¶ 40-41.) When his condition did not improve, another physician assistant diagnosed Plaintiff with Reactive Airway Dysfunctional Syndrome ("RADS") and prescribed an albuterol inhaler. (Id. ¶¶ 42-43.) At this time, the physician assistant informed Plaintiff that long term exposure to high levels of secondhand smoke caused his respiratory condition. He also informed Plaintiff that continued exposure could cause further problems such as respiratory tract infections, chronic obstructive pulmonary disease ("COPD"), and lung cancer. (Id. ¶ 44.) Plaintiff alleges that he continued to suffer breathing attacks triggered by exposure to secondhand smoke. (Id. ¶ 46.) In 2009, Plaintiff was diagnosed with COPD and severe asthma. (Id. ¶¶ 33 & 49.) In April 2009, a pulmonologist concluded that the cause of Plaintiff's COPD and

asthma was the prolonged and repeated exposure to secondhand smoke. (Id. ¶ 52.) Plaintiff's complaint continues to chronicle the various treatments and diagnoses of lung ailments from that point, culminating in a diagnosis of fibrosis on June 17, 2013. (Id. ¶¶ 53-70.) Of note, Plaintiff sent a letter to Defendants, dated May 12, 2013, explaining that he was diagnosed with COPD and asthma in 2009 and has been told by "clinicians" from 2008 to present taht secondhand smoke not only exacerbated his serious physical conditions but "was the cause of it." (Id. ¶¶ 28 & 33.)

On December 16, 2013, Plaintiff filed suit asserting state law claims sounding in negligence and strict liability against three tobacco companies, R.J. Reynolds Tobacco Co., Phillip Morris Inc., and American Tobacco Co. Plaintiff alleges that Defendants "have a[n] owed duty and corporate obligation . . . to protect non-consumers from impending health dangers or injury directly or indirectly caused by their tobacco products." (Id. at 3.) More particularly, Plaintiff alleges in Paragraph 18 that since 1954, Defendants have "engaged in dishonest and gross negligent activities in violation of Georgia's tort laws" by

1. failing to inform the public regarding the risks of secondhand smoke to non-smokers ("failure to warn" claim);

2. conducting advertising and promotional campaigns that were misleading and omitted material facts ("fraud claim");

3

3. making implied representations that tobacco products are safe and free of harmful effects, contrary to facts known by Defendants ("fraud claim");

4. conspiring to conceal the scientific evidence of the risks of involuntary exposure to secondhand smoke ("conspiracy to commit fraud claim"); and

5. knowingly manufacturing and selling products that cause serious and fatal health implications on non-smokers ("product liability" claim).

(Id. ¶ 18.) Because of these acts or omissions, Plaintiff has suffered "permanent disabilities including severe asthma, chronic obstructive pulmonary disease and fibrosis." (Id. ¶ 88.)

Because Plaintiff is proceeding *in forma pauperis*, his complaint has been screened pursuant to 28 U.S.C. § 1915(e)(2)(B). This screening process disallows a claim from going forward if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. The United States Magistrate Judge screened Plaintiff's complaint on July 18, 2014, and issued two orders. First, a Report and Recommendation recommended the dismissal of Plaintiff's fraud and conspiracy to commit fraud claims because of his failure to plead fraud with particularity. (Doc. No. 10.) This Court adopted the Report and Recommendation without objection and dismissed those claims on August 13, 2014. (Doc. No. 14.) Second, an Order directing service of the complaint was entered upon a finding that Plaintiff had "*arguably* stated

4

viable tort claims in negligence for failure to warn and design and manufacture of a defective product, and in strict liability for design defect under O.C.G.A. § 51-1-11." (Doc. No. 9, at 4 (emphasis in original).) The Magistrate Judge expressly reserved ruling on whether Plaintiff's failure to warn claim is preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 et seq. (Id.)

Defendants R.J. Reynolds Tobacco Co. and Phillip Morris Inc. executed waivers of service of summons on August 4 and 13, 2014, respectively. (Doc. Nos. 13 & 16.) However, Plaintiff has been unable to provide a proper address for Defendant American Tobacco Company, and the United States Marshals Service has been unable to serve the waiver of service of summons upon this Defendant.[2] (See Doc. No. 23.) In the meantime, the properly served Defendants have jointly filed the instant motion to dismiss the remaining claims.

---

[2] Defendant R.J. Reynolds Tobacco Co. informs the Court that Defendant American Tobacco Company was merged into Brown & Williamson Tobacco Corporation in 1995. In 2004, Defendant R.J. Reynolds Tobacco Co. became the successor-in-interest to Brown & Williamson Tobacco Corporation. Thus, Defendant American Tobacco Company no longer exists as a corporate entity. In any event, because Plaintiff's claims are barred by the applicable statute of limitations and are preempted, Defendant American Tobacco Company would be dismissed regardless of whether Plaintiff was able to effect service.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 556-57 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

## III. LEGAL ANALYSIS

As previously mentioned, Plaintiff's failure to warn and negligent and strict product liability claims were permitted to proceed past the screening process. Now, however, Defendants seek dismissal of these state law claims based upon the statute of limitations and federal preemption. The Court will address each of these defenses in turn.

### A. Statute of Limitations

The applicable statute of limitations, O.C.G.A. § 9-3-33, provides "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues . . . ." Defendants point out that Plaintiff was diagnosed with COPD and asthma in 2009 at which time a physician assistant concluded that his conditions were caused by secondhand smoke.[3] (See Compl. ¶¶ 33 & 52.) Thus, at the very latest, Plaintiff should have filed his personal injury lawsuit in 2011. The suit was filed in December 2013.

Plaintiff responds that the statute of limitations is tolled in that he has alleged a continuing tort against Defendants. A continuing tort is one inflicted over a period of time. Everhart v. Rich's, Inc., 194 S.E.2d 425, 428 (Ga. 1972) (explaining that a continuing tort involves a situation

---

[3] In fact, the argument could be made that Plaintiff was aware of the causal connection between his physical ailments and secondhand smoke in 2008. (See Compl. ¶¶ 43-44.)

7

"where any negligent or tortuous act is of a continuing nature and produces injury in varying degrees over a period of time"). Plaintiff argues that because the nature of secondhand smoke exposure is continuing in nature and he "continues to get conflicting diagnosis (sic) regarding the cause of his serious health conditions," the statute of limitations has not begun to run. (Pl.'s Resp. to Mot. to Dismiss, at 2.)

The continuing tort doctrine will indeed toll the statute of limitations "until such time as the continued tortuous act producing injury is eliminated," Everhart, 194 S.E.2d at 428, or until the plaintiff "has knowledge, or through the exercise of ordinary care could have learned, of the existence of the continuing tort," Parker v. Vaughan, 183 S.E.2d 605, 606 (1971). The latter event triggering the statute of limitations period is known as the discovery rule. See Waters v. Rosenbloom, 490 S.E.2d 73, 75 (Ga. 1997) ("Georgia courts have consistently held that in a continuing tort[,] a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." (cited sources omitted)).

In an instructive case, the Georgia Court of Appeals applied the discovery rule to a continuing tort to bar the claim on statute of limitations grounds. In Thomason v. Gold

Kist, Inc., 407 S.E.2d 472 (Ga. Ct. App. 1991), family members sued the manufacturer of a toxic pesticide, Chlordane, that the family had used to kill roaches inside the home. The plaintiffs had argued that their cause of action did not accrue until the date upon which they were specifically diagnosed with symptoms of Chlordane poisoning. Id. at 474. The Georgia Court of Appeals instead upheld the trial court's ruling that the statute of limitations began to run when the plaintiffs suspected that Chlordane was the cause of their alleged injuries more than two years before they had filed suit. Id. at 475. In doing so, the Georgia Court of Appeals stated: "A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." Id. at 473 (quotations and cited sources omitted).

Applying the discovery rule to the facts of the instant case, there is no doubt that Plaintiff discovered in 2008 or 2009 at the latest that his alleged injuries may have been caused by secondhand smoke. It is of no moment that Plaintiff has allegedly not had a definitive diagnosis of cause from a medical practitioner.[4] It is not necessary that Plaintiff

---

[4] On this point, Plaintiff attaches to his responsive brief the affidavits of two physicians employed with the

9

discover the full extent of the harm caused by Defendants for the limitations period to begin to run; rather, the limitations period began to run under the discovery rule as soon as Plaintiff discovered that Defendants' conduct caused "some injury, no matter how minor." See M.H.D. V. Westminster Schools, 172 F.3d 797, 805 n.16 (11th Cir. 1999) (citing Hickey v. Askren, 403 S.E.2d 225, 227-28 (1991)). Accordingly, Plaintiff's personal injury claims are barred by the applicable statute of limitations and must be dismissed.

B.  Federal Preemption

Defendants contend that the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 et seq. (the "Labeling Act"), enacted in 1965, expressly preempts Plaintiff's failure to warn claim. The Labeling Act established a "comprehensive Federal Program to deal with cigarette labeling and advertising with respect to any relationship between smoking

---

Georgia Department of Corrections which had been submitted by the defendants in another lawsuit brought by Plaintiff against prison officials. (See Doc. No. 52, Cassady v. Owens, Case No. 4:08-cv-250 (S.D. Ga. Dec. 30, 2008)). Remarkably, Plaintiff alleged in this prior lawsuit filed in 2008 that his breathing ailments were caused by prolonged and repeated exposure to secondhand smoke. (Compl. ¶ 30, Cassady v. Owens, Case No. 4:08-cv-250.) Thus, the submission of these affidavits have only served to underscore the fact that Plaintiff knew or had reason to know that his alleged injuries were caused by secondhand smoke as early as 2008. Accordingly, the submitted affidavits are not useful to Plaintiff in rebutting the application of the statute of limitations and were not considered in resolution of the instant motion to dismiss.

10

and health." 15 U.S.C. § 1331. Pursuant to the Labeling Act, "[n]o requirement or prohibition based on smoking and health shall be imposed under state law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b); see Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 524 (1992) (declaring that claims that "require a showing that [tobacco companies'] post-1969 advertising or promotions should have included additional, or more clearly stated, warnings . . . are preempted") Plaintiff acknowledges the preemptive effect of the Labeling Act on his failure to warn claims (see Pl.'s Resp. to Mot. to Dismiss, at 4), and therefore any such claim must be dismissed.[5]

There remains then Plaintiff's product liability claims. Defendants contend that the doctrine of implied or conflict preemption preempts Plaintiff's negligence and design defect claims and strict liability claims to the extent that Plaintiff seeks to hold Defendants liable merely for manufacturing and selling a product that produces secondhand smoke. This same argument was addressed and accepted by the district court in the Northern District of Georgia in Gault v. Brown & Williamson Tobacco Corp., 2005 WL 6523483 (N.D. Ga.

---

[5] Any claim that Defendants "made implied representations that tobacco products are safe and free of harmful effects" (Compl. ¶ 18) is also preempted. See Cipollone, 505 U.S. at 527.

11

Mar. 31, 2005). In a well-reasoned opinion, the Honorable Robert L. Vining, Jr., concluded that a claim seeking to hold the defendant liable for manufacturing and distributing a dangerous and addictive product conflicts with "the federal objective of Congress's tobacco legislation which allows cigarettes to remain on the market despite their known dangers and addictiveness." Id. at **5-8. In the Gault complaint, the plaintiffs had alleged that the tobacco company acted negligently by "designing, manufacturing, selling and promoting cigarettes which it knew or should have known contained dangerous substances likely to cause injury and death and which had addictive and habit-forming characteristics." Id. at *7. In ruling that this claim was impliedly preempted by the Labeling Act, the district court reasoned as follows:

> This allegation effectively seeks to impose a duty on the defendants not to manufacture or sell cigarettes because they are likely to cause injuries and be habit forming. The problem with this proposed duty is that it would subject the defendant to tort liability via negligence each time a cigarette was sold on the market and force the defendant to make one of two decisions; the first being to continue selling cigarettes and expose itself to tort liability each time a cigarette was sold; the second being to immediately cease manufacturing cigarettes in order to avoid this liability. This court concludes that each of these pathways leads to the same inevitable result--cigarettes being removed from the market. This result conflicts with Congress's decision to protect the national economy by itself choosing to regulate the tobacco industry and to allow tobacco

> products to remain on the market, despite their known harmful effects.

Id. at *7. The district court extended the same reasoning to the plaintiffs' design defect claim and plaintiffs' claim that the defendant acted negligently by failing to improve upon the composition and manufacture of cigarettes to decrease the consumers' risk. Id. at *8.

In the case at bar, Plaintiff similarly alleges only that "Defendants knowingly manufactured and sold tobacco for decades that cause both serious and fatal health implications to nonsmokers." (Compl. ¶ 18.) Plaintiff also alleges: "A multiplicity of both filtered and non filtered tobacco products were manufactured directly by the Defendants, and sold to inmates via the Georgia prison systems commissary for over two decades during Plaintiff's confinement, and is the direct cause of his serious health injuries . . . ." (Id. ¶ 84.) In short, these and similar allegations of product liability are nothing more than Plaintiff seeking to hold Defendants liable simply because they sold a dangerous and addictive product on the market-a claim that is impliedly preempted by the Labeling Act. Accordingly, Plaintiff's negligent and strict product liability claims are also prempted and therefore dismissed.

13

### IV. CONCLUSION

Upon the foregoing, Defendants' motion to dismiss the complaint (doc. no. 20) is hereby **GRANTED**. Costs are assessed against Plaintiff. The Clerk is directed to **ENTER JUDGMENT** against Plaintiff and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of October, 2014.

/s/ Dudley H. Bowen, Jr.
UNITED STATES DISTRICT JUDGE